**L. N. TAUBER, Appellant,**

v.

**Morton NOBLE, Appellee.**

No. 2731.

Municipal Court of Appeals for the District of Columbia.

Argued April 10, 1961.

Decided June 28, 1961.

Joseph V. Gartlan, Jr., Washington, D. C., with whom Leonard S. Melrod and E. David Harrison, Washington, D. C., were on the brief, for appellant.

Leonard R. Snyder, Washington, D. C., for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

QUINN, Associate Judge.

In November 1958 appellee recovered a default judgment of $1,325.42 against Art-len Corporation, a real estate development company, of which appellant was vice president, director, and majority shareholder. Appellee was unable to satisfy the judgment because Artlen had transferred its primary, if not sole, asset, a piece of property on Connecticut Avenue, to appellant and his three fellow shareholder-directors in December 1956. In turn, they had sold the property to a third party and had divided the proceeds. Appellee brought the present action to impress a constructive trust on the share realized by appellant. The court granted the relief requested.

Artlen was organized in 1953 or 1954 with paid-in capital of $300, procured by the issuance of 300 shares at par value, 150 going to appellant and the remaining 150 to four other subscribers.[1] Sometime during 1954 appellant acquired the Connecticut Avenue property hitherto mentioned and conveyed it to Artlen for the purpose of having an apartment building erected on the site. The property at that time being twice encumbered, appellant was informed that it would be necessary to pay off the first mortgage and arrange a subordination of the second as a condition to obtaining a construction loan of approximately $110,-000 for Artlen. Accordingly, as appellant testified at trial, the shareholder-directors, contributing in proportion to their shareholdings, "loaned" Artlen the amount needed to liquidate the first mortgage, and by assuming personal responsibility for the indebtedness, they had the surviving mortgage deferred to second place, behind the lien of the forthcoming construction loan. Signing on behalf of the company and placing their personal endorsements on the construction loan obligation, they received the borrowed funds and the company began work on the project, appellee rendering certain architectural services which formed the basis for this action. When this fund was exhausted, the shareholder-directors bore, at least in part, the burden of financing the rest of the construction, again "loan-

---

1. Later, one of the four sold his interest to the other three so that appellant thereafter held 150 shares and each of his colleagues 50.

ing" Artlen the money on a pro rata basis as the need arose from time to time.

■ Accepting that these periodic advances to Artlen were in truth loans,[2] as both contestants have treated them, the issue is whether the transfer of the Connecticut Avenue realty constituted an improper creditor preference. Appellant denies that it was, contending first of all that Artlen was free to so act because it was not insolvent at the time.

■ Our Business Corporations Act recognizes the generally approved definition of insolvency, describing it as the condition existing when " * * * the corporation is unable to pay its debts as they become due in the usual course of its business." [3] We believe the evidence supports such a finding of financial embarrassment by the trial court.

It would be difficult indeed to find more conclusive proof of financial incapacity than the action of appellant and his co-shareholder-directors in stripping the company of its assets in December 1956, leaving an unspecified number of creditors still unpaid. That conveyance left the company no longer a going concern; Artlen was then insolvent and virtually abandoned without promise or hope of future business success; it was, in a word, defunct. Appellant's statement at trial that the corporation continued to pay creditors after that date until May 1957, at which time all creditors but appellee had been satisfied, and the introduction of a bank book showing that the company maintained a checking account during that period do not alter the situation. The fact that creditors were paid was plainly due not to Artlen's financial means or ability but rather to donations of the shareholder-directors who replenished the account for that purpose. Even if we use the going concern insolvency test employed in the Code section above cited, there is nothing to indicate that the parties made sufficient funds available to satisfy all creditors, including appellant, as the debts became "due in the usual course of its business." Evidence suggests the contrary.

■ Nevertheless, appellant would uphold the directors' transfer of the realty to themselves on the widely held rule generally permitting an insolvent corporation to prefer favored creditors, where fraud and prohibitive statute are absent.[4] That view being recognized in this jurisdiction,[5] he argues that it necessarily displaces the so-called trust fund doctrine which requires that all competing creditors share ratably in the remaining assets of the insolvent company. Yet, even were these two theories irreconcilable, it would not help appellant's position.

■ The majority of jurisdictions in this country prohibit an insolvent corporation's preference to its creditor-director. Among the reasons assigned, Fletcher lists the application of the trust fund doctrine, statutory denial, and the equitable idea that the director should not be allowed to profit by

2. We add that the trial court might conceivably have construed the system of payments as delayed capital contributions. Certainly, in grossly under-capitalizing the company, appellant and his coinvestors must have recognized the patent inadequacy of the original capital sum. A fair inference to be drawn is that the parties contemplated as part of the subscription agreement that further payments would be required to insure Artlen a fair chance of success. From this approach the property conveyance would appear as a liquidating dividend, clearly improper where general creditors remain to be paid. See generally 15A Fletcher, Cyclopedia of Private Corporations § 7581 (Perm.Ed.1938).

We do not consider alternative theories which impose personal liability against the undeserving shareholder or errant director.

3. Code 1951, § 29–902(n) (Supp. VIII).

4. Brownley v. Peyser, 1938, 69 App.D.C. 56, 98 F.2d 337; 15A Fletcher, op. cit. supra, note 2, § 7421, contains a list of numerous cases.

5. Brownley v. Peyser, supra, note 5.

his position of influence and control at the expense of other creditors who are equally deserving of consideration. The authorities grounding the rule upon this latter theory do so without concern for the application or nonapplication of the trust fund doctrine.[6] We believe such an approach is eminently sound and just. That this sentiment was not voiced in Brownley overlooks the special circumstances of that case. The ruling there by our United States Court of Appeals allowing a transfer by an insolvent company to its subsidiary was a preference remedial in character to correct past abuses by the parent company. We do not understand it to sanction conveyances of the kind found in the instant case. We hold that the trial court acted correctly in awarding the relief to appellee.

Affirmed.

---

6. 15A Fletcher, op. cit. supra, note 2, §§ 7470, 7471, contains jurisdictional breakdown and discussion of the rule. See also 13 Am.Jur. §§ 1271, 1272.