369 So.2d 413 (1979)
Edward J. CAMPBELL and Dr. Richard K. Campbell, As the Personal Representative of the Estate of John W. Campbell, Deceased, Appellants,
v.
James G. PACE, d/b/a James G. Pace & Associates, Miami Industrial Inc., a Florida Corporation, and Howard Pepion, Appellees.
No. 78-628.
District Court of Appeal of Florida, Third District.
April 3, 1979.
Hendricks & Hendricks and B.E. Hendricks, Coral Gables, for appellants.
*414 Prunty, Ross & Olsen and John W. Prunty, Miami, for appellees.
Before HENDRY, BARKDULL and SCHWARTZ, JJ.
BARKDULL, Judge.
The Campbells appeal a summary judgment entered by the trial court, which impressed the proceeds[1] of a foreclosed mortgage with a constructive trust or an equitable lien in favor of the appellee-brokers.
John W. Campbell, after entering into a contract for the sale of a large tract of undeveloped property, entered into a letter agreement[2] wherein he recognized the appellees as brokers entitled to a 5% commission if the transaction closed. The letter provided that the commission would be paid "at the rate of 5% of all principal paid and received by me from the purchaser or his assigns."[3]
We affirm. It is clear from the letter agreement entered into between John Campbell and the brokers that the brokers were to receive their commission from a particular fund, to wit: the principal payments made on the purchase price of the property, when and if received by Campbell. Although the brokers may not have been able to enforce the collection of the note, they were entitled to have Campbell remit to them 5% of any monies that he might collect on the principal. This, in fact, made Campbell or his successors a trustee of 5% of the principal he received for the use and benefit of the brokers. If Campbell had refused to protect the fund or to seek collection thereof, then he would have been liable personally, whether or not he collected the fund. Florida Boca Raton Housing Association, Inc. v. Marqusee Associates of Florida, Inc., 177 So.2d 370 (Fla. 3d DCA 1965); Americana Hotel, Inc. v. Zable, 226 So.2d 272 (Fla. 3d DCA 1969); Edward J. Gerrits, Inc. v. Astor Electric Service, Inc., 328 So.2d 522 (Fla. 3d DCA 1976); accord, Ballas v. Lake Weir Light & Water Company, 100 Fla. 913, 130 So. 421 (1930); Cohen v. Mohawk, Inc., 137 So.2d 222 (Fla. 1962). The brokers were not contingent general creditors of Campbell; Campbell was their trustee for those funds that came into his possession as a result of this sale, to the extent that they represented principal payments. A portion of these principal payments, to wit: 5%, were not assets of Campbell; therefore, were not assets to be included within Campbell's estate and were not assets to be reached by a general creditor, which would have required the filing of a claim. When the monies representing the *415 balance of the principal payments came into the hands of the Personal Representatives of the Campbell Estate, 5% of these funds were held by them as successor constructive trustees, to the same extent that Campbell would have been responsible if he had been alive. Broome as Admr. v. Bisbee, 14 Fla. 21 (1871); Moss v. Sperry, 140 Fla. 301, 191 So. 531 (1939). In Broome as Admr. v. Bisbee, supra, the Supreme Court said:
"In this case Bisbee seeks to share in this particular fund, by virtue of peculiar equities attaching to his demand against the deceased intestate. A court of common law certainly cannot afford this relief or act upon this particular fund. The sole question is: Does the case made entitle him to share in this particular fund, or does he occupy the standing of a general creditor of this insolvent estate, with no equity entitling him to a portion of this fund, resulting from his contract and the relations of the parties? Being entitled under the terms of the original contract to one-half of the moneys which Smith was to receive from Myers, the defendant in execution, he is clearly entitled, as against his legal representative or others having a beneficial interest in the estate, to the benefit of all liens which Smith may acquire for his security. Smith's claim for services has merged in the judgment, and upon the collection of the judgment Bisbee is clearly entitled to one-half of the specific funds. Smith's contract was not to pay Bisbee a certain amount at all events. It was to pay him one-half of the sums he would realize from Myers, as the services which Bisbee rendered were to enure to the benefit of Myers. After Bisbee has performed one-half, if not more, of the service which these identical funds represent, relying upon the capacity of Myers to pay Smith, and upon the express understanding that he was to share in them in that proportion, it would be palpably inconsistent with the plainest principles of right and justice to make him occupy the relation of a general creditor of an insolvent estate, thus permitting other creditors who had no such equity to take, as against him, a part of this particular fund. The general creditor who relied upon the general credit of the intestate must look to his general assets. This particular creditor who has no claim upon the general assets, and who is entitled to no compensation unless something was realized from a debtor to the estate, and in that event to but one-half of the amount, will be given the right in equity to share in that fund without deduction, when the fund can be identified as in this case. If Smith or his estate had never realized anything from Myers, Bisbee could have claimed nothing. Having taken this risk for all purposes of loss, a court of equity, under the particular contract here disclosed, will make it effectual for the purposes of advantage.
"That Bisbee has a demand payable out of this particular asset cannot be denied. This is the contract set up and established by proof, indeed the administrator does not deny it. Where a legatee has a right to a particular fund, a court of equity will always secure the interest in his favor when the contest is between legatees, and where the superior rights of creditors do not intervene. In this case the demand is by contract. The particular asset is liable for this particular claim; the general assets are not, except conditionally in the event of an improper appropriation by the intestate. That is the case with the amounts collected by the intestate during his life. Respondent is a general creditor as to that, and there is no claim upon the judgment for that. The fund must be identified. These views are fully sustained by adjudicated cases. 2 Ves. Jr. 619; 1 Ves. Sr., 282; 1 Mar. Chy. Dec. 64; Story's Eq. 846, 730, 717."
This transaction is not an unusual one, wherein large pieces of property are sold on an installment basis; it protects the seller from having to pay a broker on the entire purchase and sale price until such time as he is assured that he will receive all the purchase price. In this connection, see the following: Ballas v. Lake Weir Light & Water Company, supra; Murphy v. Green, 102 Fla. 102, 135 So. 531 (1931); Langford *416 v. King Lumber & Manufacturing Co., 123 Fla. 855, 167 So. 817 (1936); reargument granted 127 Fla. 111, 172 So. 686 (1937), affirmed 132 Fla. 143, 181 So. 395 (1938).
We have examined the authorities cited by the appellant and find them not to be applicable, as they are distinguishable. Some of those authorities relate to a situation wherein a real estate broker sought to impose an equitable lien for commissions against the realty, where the brokers had represented the seller of said realty. They hold the broker's cause of action is for damages at law against the seller. In the instant case, the action imposed an equitable lien or charge against monies in the hands of the seller's successor. The remaining authorities were sufficiently different factually, so as not to be applicable. They either sought to impose an equitable lien on real property when the plaintiff either failed to plead or prove a right thereto, or they sought to impose an equitable lien against certain monies which were not earmarked by agreement for payment of the alleged debt.
Therefore, for the reasons above stated, the summary judgment under review be and the same is hereby affirmed.
Affirmed.
NOTES
[1] The proceeds were in the exact amount unpaid on the mortgage and were obtained by assignment of the foreclosure judgment. The realty itself had never come back into the hands of the seller or his successor.
[2] John Campbell died between the date of the letter and the foreclosure suit.
[3] The letter agreement reads, in part, as follows:

.....
"If this Agreement for Purchase and Sale is actually closed and consummated by Mr. Horton, as Trustee, or his assigns, under the referred to Agreement for Purchase and Sale, I recognize that Mr. Pace and his corporation or corporations, and Mr. Pepion, are entitled to a real estate commission on the sale of five percent (5%) of all principal paid and received by me from the purchase or his assigns.
"The property is being sold on an installment basis and the commission is to be paid to you in the same manner and percentage as the commission and the percentage relates to the purchase price as the downpayment [sic] and subsequent deferred principal payments are paid and received by me as seller.
"In the event of default by the purchaser on any deferred principal payments wherein foreclosure proceedings are instituted and the title to the property, or any portion of the same not released, is re-acquired by the undersigned seller, no other or further commission will be paid as it is specifically agreed that the commission will be paid as the principal of the purchase price is actually paid and received and no commission is due and payable unless an actual sale is consummated.
"Of any sums that are placed on deposit by the purchaser pursuant to the terms of the Agreement for Purchase and Sale and such deposited sums are forfeited and received by me in the event that a sale is not consummated, you will be paid 5% of such sums, and the undersigned shall not be further liable to you in any manner in connection with this transaction."
.....