**Troy B. CONNER, Jr., Esq., Appellant,**

v.

**1747 PENNSYLVANIA AVENUE ASSOCIATES, L.P., et al., Carr Realty, L.P., Carr Realty Corp., Klock 1747 Pennsylvania Avenue Associates, L.P., et al., Appellees.**

No. 94–CV–1049.

District of Columbia Court of Appeals.

Argued Oct. 23, 1995.

Decided Dec. 28, 1995.

Stephen V. Wehner, for appellant.

Arnold S. Albert, with whom Seth B. Shapiro was on the brief, for appellees.

Before FERREN and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

Troy B. Conner, Jr. challenges a judgment following a bench trial granting 1747 Pennsylvania Avenue Associates, L.P., and its constituent partners, damages in the amount of $56,272.53. The trial court found that Conner, as president, director, and sole stockholder of Conner & Wetterhahn, P.C., was liable for the breach of the corporation's lease with the lessor because he took money from the corporation after it was insolvent. We affirm.

## I.

The trial court made the following findings of fact. Conner is a lawyer who formed a professional corporation in 1982 called Conner & Wetterhahn, P.C. (hereinafter "Conner & Wetterhahn"), with two other partners, Mark Wetterhahn and Robert Rader. Conner was the president and the majority shareholder of the corporation. Eventually they were joined by an associate, Nils Nichols, who became the fourth partner but never became a shareholder. The corporation leased premises from the predecessors in interest of 1747 Pennsylvania Avenue Associates, L.P., at 1747 Pennsylvania Avenue, N.W., in the District of Columbia, under a ten-year lease, which began on August 5, 1983. The lease did not contain any personal guarantees.

On May 21, 1990, Rader and Wetterhahn announced that they were leaving Conner & Wetterhahn and returning their stock, and began working to take clients with them. The fourth partner, Nichols, was elected to replace the other two as an officer and director of the corporation. Conner notified the lessor by letter that the corporation would be vacating the premises by the end of June 1990. However, the corporation stayed on the premises for an additional two

months. On July 19, 1990, Conner & Wetterhahn's attorney, Gary Goodman, advised the lessor that the corporation only had sufficient funds to pay an additional month's rent.

Around the end of July, Conner & Wetterhahn's last major client, Philadelphia Electric Co., chose to take its business in-house. Conner & Wetterhahn vacated the premises in August of 1990. The lessor was paid rent through the month of August 1990, but did not receive any more payments from Conner & Wetterhahn. There was never a modification of the lease or an agreement that the corporation would not have to pay the remainder of the rent. Conner proceeded to dissolve the corporation, and it was ultimately dissolved on December 31, 1990.

Between June 28, 1990 and December 31, 1990, Conner voted for, assented to, and authorized the corporation's payment of $86,272.53 to himself. The court found that these were "advances against profits" as opposed to salary. In December, the lessor's senior attorney notified counsel for Conner & Wetterhahn that they were contemplating suit. On January 7, 1991, the lessor filed a complaint in the Superior Court against Conner & Wetterhahn and obtained a default judgment, including pre-judgment interest and attorney's fees, for over $200,000. This judgment was entered on September 6, 1991, but has never been satisfied.

The lessor filed a complaint against Conner and Nichols individually on November 17, 1992. The complaint alleged that Conner and Nichols were liable as individuals based on either an insider preference theory or through piercing the corporate veil. The case against Nichols was dismissed after he and the lessor reached a settlement.

On June 15, 1994, the trial court found that the amount of money that was owed on the remainder of the lease was $384,902. However, the lessor agreed to stipulate to a maximum of $86,272.53 in damages. The court found that there was insufficient evidence on the issue of piercing the corporate veil. This ruling is not challenged on appeal. The court then concluded that Conner had helped the firm wind up its affairs, and therefore was entitled to $30,000 in quantum meruit payments for the reasonable value of his services for the months of June, July and August of 1990. However, the court found that the balance of $56,272.53 that was paid to Conner was the equivalent of a preference to an insider-creditor while the corporation was insolvent, and was not reasonable compensation for his services. Therefore, the court awarded the lessor damages in the amount of $56,272.53.

## II.

■ Conner raises the following four issues in this appeal: (1) whether he can be held liable for the breach of lease committed by Conner & Wetterhahn; (2) whether the court abused its discretion by finding Conner liable based on a statute and a theory not specifically pled by the lessor; (3) whether the court properly found that Conner & Wetterhahn had a continuing obligation to pay rent and that the lessor sufficiently mitigated its damages; and (4) whether the lessor had the capacity to sue.[1]

### A.

■ The law of the District of Columbia prohibits several types of preferences. For example, a trustee in bankruptcy may not prefer one creditor over another:

A provision in a voluntary assignment made for the payment of one debt or liability in preference to another is void, and all debts and liabilities within the provisions of the assignment shall be paid pro rata from the assets.

*Dominique v. Ralph D. Kaiser Co.,* 479 A.2d 319 (D.C.1984), and concluded that a jury trial should not be granted because appellees represented that they would have prepared differently for a jury trial, and the issue of credibility had not suddenly become a critical issue. This decision was well within the discretion of the trial court. *See generally Johnson v. United States,* 398 A.2d 354 (D.C.1979).

---

1. Conner also argues that the Superior Court abused its discretion in denying him a jury trial. Conner made a motion for a jury trial after the conclusion of discovery, claiming that credibility loomed as a critical issue. The court noted that under Super.Ct.Civ.R. 38(d), Conner had waived his right to a jury trial, but under Super.Ct.Civ.R. 39, the court could grant a jury trial in its discretion. The court looked at the factors set out in

D.C.Code § 28–2107 (1981). This court has stated that "the public policy of the District of Columbia, as embodied in D.C.Code § 28–2107 (1981), forbids an insolvent debtor from establishing a preference for one creditor over others." *Stern v. J. Nichols Produce Co.*, 486 A.2d 84, 89 (D.C.1984).

■ More specifically, District of Columbia law prohibits preferences to insider-creditors when a corporation is insolvent:

The directors of a corporation who vote for or assent to any distribution of assets of a corporation to its shareholders during the liquidation of the corporation without an adequate provision for, or the payment and discharge of all debts, obligations, and liabilities of the corporation shall be jointly and severally liable to the corporation for the amount of such dividend which is paid or the value of such assets which are distributed, to the extent that such debts, obligations, and liabilities of the corporation are not thereafter paid and discharged[.]

D.C.Code § 29–342(a)(3) (1981). We have noted that "[t]he majority of jurisdictions in this country prohibit an insolvent corporation's preference to its creditor-director." *Tauber v. Noble*, 172 A.2d 552, 554 (D.C.Mun.App.1961). Among the reasons discussed was "the equitable idea that the director should not be allowed to profit by his position of influence and control at the expense of other creditors who are equally deserving of consideration." *Id.* at 554–55. As we stated in another case, "when assets of an insolvent corporation are transferred to others in an attempt to hinder or defraud creditors, the transferees are liable for the corporate debt to the extent of such assets as they received." *Askew v. Randolph Carney Co.*, 128 A.2d 788, 789 (D.C.Mun.App.1957); *see also Corporation Audit Co. v. Cafritz*, 81 U.S.App.D.C. 196, 156 F.2d 839 (1946); *United States v. Coyne*, 540 F.Supp. 175 (D.D.C. 1981). We conclude that the policies advanced by these statutory sections and cases sufficiently cover the actions of Conner.

Therefore, Conner can be held liable for the distributions he received if the trial court properly found that he was an insider who received the advances when the corporation was insolvent.[2]

The trial court found that Conner was an insider of Conner & Wetterhahn based on the fact that he was the sole shareholder and the president. This finding is adequately supported by the evidence and therefore we must affirm. *See* D.C.Code § 17–305(a) (1981). The trial court also concluded that Conner was a creditor based on his quantum meruit claim for wrapping up the affairs of the corporation and by virtue of being a shareholder who was entitled to assets that remained after the dissolution of the corporation. The resolution granting Conner the right to dividends during the relevant months also made him a creditor. Since the resolution guaranteed him payments for which he could sue if he had not been paid, he became a creditor by virtue of the resolution. *See* 11 FLETCHER CYC. CORP. §§ 5322, 5365–66 (Perm.Ed.1995); *Mann–Paller Found. v. Econometric Research, Inc.*, 644 F.Supp. 92, 95 (D.D.C.1986). Therefore, the trial court correctly concluded that Conner was an insider-creditor.

The court also found that Conner & Wetterhahn was insolvent as of August of 1990. The court looked to the definition of insolvency in the District of Columbia Business Corporations Act: " '[i]nsolvent' means that the corporation is unable to pay its debts as they become due in the usual course of its business." D.C.Code § 29–302(14) (1981). The trial court's finding that the corporation was insolvent as of August of 1990 is adequately supported by the record. *See* D.C.Code § 17–305(a). We sustain it.

■ Since Conner & Wetterhahn made payments against proceeds to Conner when it was insolvent, and it had an outstanding debt to the lessor, Conner was not entitled to these payments. However, the court found that he was entitled to quantum meruit pay-

**2.** Conner argues that appellees lacked standing to sue because no statute or reported decision allows a creditor of a corporation, as opposed to the corporation itself, to challenge the type of payments made to Conner. We find this to be a meritless argument. In order to deter these types of preferences it is necessary to allow creditors to challenge them. The decision in *Tauber v. Noble, supra,* to take just one case, admits of no such limitation as the one Conner argues.

ments for winding up the affairs of the corporation. The court correctly found that Conner had satisfied the requirements for quantum meruit payments we laid out in *Brown v. Brown,* 524 A.2d 1184 (D.C.1987), and *Waco Scaffold & Shoring Co. v. 425 Eye Street Assocs.,* 355 A.2d 780 (D.C.1976). The trial court also found that Conner had done sufficient work to deserve the total of $30,000 he received in June, July and August. However, the court decided that the evidence was insufficient to permit it to find how much time was spent in the months from September to December of 1990. The court was unpersuaded when Conner attempted to firm up his earlier testimony with more details of the time he had spent. The court determined that he had not satisfied his burden of proof on this issue, and found that he should be awarded nothing for his work during September through December of 1990. These conclusions are not clearly erroneous. *See* D.C.Code § 17–305(a).

In sum, the findings of the trial court are legally supportable by the District of Columbia law of preferences. As an insider-creditor, Conner should not have resolved to give himself advances against profits of Conner & Wetterhahn to the detriment of outside creditors. Since he had a right to compensation for winding up the affairs of the corporation, the court offset the amount owed to the lessor by $30,000.

## B.

Conner argues that the trial court abused its discretion by finding liability based on a theory of insider-creditor preferences with a set-off for quantum meruit payments. The court in part relied on D.C.Code § 29–342, even though this code section was not pled by the lessor. The court determined later in the trial that the theory of quantum meruit applied to Conner's actions to wind up the corporation. The complaint included general allegations that the payments made to Conner were illegal preferences to an insider-creditor under District of Columbia law, but did not cite specifically to the statutory sec-

tion the court relied on. Conner argues that this caused him prejudice because he was not able to examine witnesses or prepare them to testify on the newly found theory, and he was not able to file a potential cross-claim against co-defendant Nichols, the other remaining director of the corporation, who had settled with the lessor.

■ The trial court found that Conner was not unduly prejudiced and had adequate notice of the claims asserted against him. A complaint is sufficient if it puts the defendant on reasonable notice of the claim against him. Super.Ct.Civ.R. 8 and 9; *Lee v. Foote,* 481 A.2d 484 (D.C.1984); *Morrison v. Baltimore & Ohio R.R. Co.,* 40 App.D.C. 391 (1913). We agree with the trial court that Conner should have recognized the applicability of the statutory section based on the allegations made by the plaintiff. The court's use of this section did not present a new theory but merely expanded on the theory already presented by the plaintiffs with the addition of the relevant statutory section. The trial court did not abuse its discretion by basing part of its ruling on a statutory section not explicitly relied on by the plaintiff. *See generally Johnson v. United States,* 398 A.2d 354 (D.C.1979).

The court below also determined that the theory of quantum meruit applied, although it had not been pled by either party. Conner argues that the trial court should not have used this theory to find that he was a creditor. The trial court correctly found that Conner was a creditor based on more than this theory alone.[3]

## C.

■ Conner argues that when Conner & Wetterhahn vacated the premises it no longer had an obligation to pay rent. This argument is groundless. The tenant has the continued obligation to pay rent throughout the lease, subject to the landlord's duty to mitigate damages. *See International Comm'n on English in the Liturgy v. Schwartz,* 573 A.2d 1303 (D.C.1990); *Satin v. Buckley,* 246

---

**3.** We note that Conner benefited from the court's use of this theory in that he was able to offset the damages by $30,000.

A.2d 778 (D.C.1968); *McIntosh v. Gitomer*, 120 A.2d 205 (D.C.Mun.App.1956). The lease specifically provided that if Conner & Wetterhahn vacated the premises before the expiration of the lease, the premises could be relet by the lessor and the corporation would be "liable for all damages sustained by Lessor, including, without limitation, deficiency in rent, reasonable attorneys' fees, brokerage fees, and expenses of placing the Demised Premises in first-class rentable condition." Therefore, Conner & Wetterhahn was liable for the loss of rent sustained by the lessor.

Conner also argues that the trial court erred in finding that the lessor sufficiently mitigated their damages. The court found that the mitigation issue was irrelevant. Even if the mitigation efforts were insufficient, Conner would only be entitled to offset eight months' rent, and the resulting amount of damages would still be greater than the maximum amount stipulated to by the parties. We find no error in the trial court's ruling on this issue. The trial court went on to find that the mitigation efforts were sufficient, and this finding is also challenged by Conner. However, since we agree that the mitigation issue is irrelevant, there is no need to review the trial court's finding of the sufficiency of mitigation efforts.

### D.

The original plaintiffs in this suit were Oliver T. Carr, Jr. and George H. Beuchert, Jr., who at the time were the trustees holding legal title to the premises which was leased by Conner & Wetterhahn. The plaintiffs subsequently moved to substitute parties under Super.Ct.Civ.R. 25 because the original plaintiffs had transferred their interests in this case to 1747 Pennsylvania Avenue Associates, L.P. The Superior Court granted this motion and requested that the parties file a stipulation setting out the full names of all party plaintiffs. The stipulation named the following plaintiffs: 1747 Pennsylvania Avenue Associates, L.P., Carr Realty, L.P., Carr Realty Corporation, Klock 1747 Pennsylvania Avenue Associates, L.P. and CarrPark, Inc. It was explained at trial that Carr Realty, L.P. and Klock 1747 Pennsylvania Avenue Associates, L.P., were the two limited partners of 1747 Pennsylvania Avenue Associates, L.P., which in turn owned the property which Conner & Wetterhahn leased. Carr Realty Corporation was the general partner of Carr Realty, L.P. The court dismissed the case against CarrPark, Inc.

Conner moved to dismiss the claims based on the inability of the remaining parties to sue because partnerships are not capable of suing or being sued. Super.Ct.Civ.R. 17; *Fennell v. Bache*, 74 App.D.C. 247, 123 F.2d 905, *cert. denied*, 314 U.S. 689, 62 S.Ct. 359, 86 L.Ed. 551 (1941). The trial court found that this was a capacity to sue issue and, alternatively, a proper service issue, and as such it should have been raised at an earlier time. The court also determined that equity required it to decide this case on the merits.

After the entry of judgment, Conner filed motions for judgment as a matter of law, amendment of judgment, and, in the alternative, to reopen the record and for a new trial to be granted. One of Conner's arguments was that the plaintiffs did not have the legal capacity to sue. The trial court ruled that Conner waived this defense. The court further stated:

> a close examination of the evidence shows that to the extent plaintiffs erred, it was in naming too many party-plaintiffs, not too few. While partnerships may not have the capacity to sue, corporations surely do. Carr Realty Corporation is the sole general partner of Carr Realty, L.P., which is the sole general partner of 1747 Pennsylvania Avenue Associates, L.P. Thus, after stripping away the partnership parties, Carr Realty Corporation remains. Unquestionably, it is a proper party.

Since the court found that Conner had waived the defense of lack of capacity, it refused to dismiss the other parties. However, it did modify the wording of the judgment to make it consistent with its findings. The Superior Court correctly applied the law of this jurisdiction regarding capacity to sue.

*Affirmed.*