# Third District Court of Appeal

## State of Florida

Opinion filed May 24, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1491
Lower Tribunal No. 14-26949
_____

**Plaza Tower Realty Group, LLC,**
Appellant,

vs.

**300 South Duval Associates, LLC, and The Union Labor Life Insurance Company,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Vezina, Lawrence & Piscitelli, P.A., and Michael Piscitelli and Jodi N. Cohen (Fort Lauderdale), for appellant.

Woodbury, Santiago & Correoso, P.A., and Michael Woodbury and Margaret Brenan Correoso, for appellees.

Carlton Fields Jorden Burt, P.A., and Matthew J. Conigliaro (Tampa), for the Florida Association of Realtors, Inc., d/b/a Florida Realtors, as amicus curiae.

Before ROTHENBERG, SALTER, and FERNANDEZ, JJ.

ROTHENBERG, J.

The plaintiff below, Plaza Tower Realty Group, LLC ("the Broker"), appeals from a final summary judgment entered in favor of defendants 300 South Duval Associates, LLC ("300 South Duval") and The Union Labor Life Insurance Company ("Union Labor") (collectively, "the Lenders"). The trial court determined that, pursuant to the Exclusive Agency Listing Agreement ("listing agreement") between the Broker and the developer, Kleman Plaza, LLLP ("the Developer" or "Owner"), the Broker did not have an "ownership interest" in the deposits retained by the Developer and subsequently remitted from the Developer to the Lenders to reduce the balance of the Developer's construction loan after contracted purchasers failed to close.

Based on the clear and unambiguous language in the listing agreement, we conclude that the Broker did have an "ownership interest" in a portion of the retained deposits because the listing agreement identifies the retained deposits as the particular fund from which the Broker will be paid any commission due and owing in the event that a unit fails to close. Therefore, we reverse the final summary judgment entered in favor of the Lenders, and remand for further proceedings consistent with this opinion.

## I. FACTS

In May 2004, the Broker and the Developer entered into the listing agreement, which includes the following provisions that govern the resolution of the issue raised in this appeal:

> 7.  Compensation.  As compensation for all services to be rendered to Owner by Broker during the term of this Agreement, Owner and Broker agree that, subject to the terms hereinafter set forth, Broker shall be deemed to have earned and be entitled to receive sales commissions only in accordance with the following:
> . . . .
>
> (e)  Anything contrary herein notwithstanding, Broker shall not be entitled to any commission whatsoever as to the sale of a Unit which fails to close for any reason whatsoever, including, without limitation, the default of Owner, provided, however, that in the event that a contract is cancelled and/or a sale fails to close for any reason whatsoever, and Owner retains the purchaser's deposits in connection therewith, then, in such event, Broker shall be paid a commission equal to one third of the amount of the retained deposits less all collections expenses, but not to exceed the full commission Broker would have earned had the defaulting buyer closed on his purchase contract. . . .
> . . . .
>
> (g) From the date when at least sixty percent (60%) of the Units have satisfied the Eligibility Requirement (the "Threshold Date"), Owner shall pay Broker, as an advance, fifteen percent (15%) of the commissions which Broker is eligible to receive. These advance commission payments shall also be retroactively applicable to all Units that met the Eligibility Requirements prior to the Threshold Date.  All commission advances paid to Broker shall be offset against final commission's payable to Broker from Unit closings or **from retained deposits pursuant to paragraph 7(e) above**. . . .

(emphasis added).

3

The Broker secured 100 pre-construction purchase and sales agreements pursuant to the listing agreement. Thereafter, the contracted purchasers' deposits were placed into an escrow account at First American Title Insurance Company ("Escrow Agent") pursuant to the escrow agreement between the Developer and the Escrow Agent.

In June 2006, Union Labor loaned the Developer over $44,000,000 to construct the project. The construction loan was secured by a first mortgage and a collateral assignment covering all of the Developer's assets, including all of the Developer's rights, title, and interests to deposits made pursuant to the sales and purchase agreements. The construction loan was subsequently assigned to Union Labor's subsidiary, 300 South Duval, in late 2009.

In 2009, seventy-nine of the 100 contracted purchasers failed to close ("defaulted purchasers"), and the Developer retained the defaulted purchasers' deposits. Thereafter, the Broker informed the Developer that it (the Broker) was entitled to a portion of the retained deposits for commissions due to the Broker for the units that failed to close. Nonetheless, in July 2009, the Developer instructed the Escrow Agent to release all of the retained deposits. As instructed, the Escrow Agent released over $2,400,000 in retained deposits to the Developer.

On September 2, 2009, without the Broker's consent, the Developer transferred the $2,400,000 in retained deposits to Union Labor, and Union Labor

4

applied the entire amount to the balance of the Developer's construction loan. The Broker demanded the payment of commissions due and owing under the listing agreement for the units that failed to close, but the funds were not remitted to the Broker.

Thereafter, the Broker initiated an action against the Lenders, with the operative complaint asserting claims for unjust enrichment and conversion. The claims were based on the Broker's assertion that that it had an interest in a portion of the retained deposits that were ultimately remitted to Union Labor without the Broker's consent.

The Broker and the Lenders filed competing motions for partial summary judgment relating to which party had a superior legal interest in the retained deposits. At a hearing conducted on the parties' motions, the Broker argued that the listing agreement identifies a particular fund for the payment of commissions due to the Broker in the event that a closing fails to take place—the retained deposits—and therefore, the Broker had an "ownership interest" in that portion of the retained deposits. In contrast, the Lenders argued that the listing agreement did not provide the Broker with an "ownership interest" in the retained deposits, and therefore, the Lenders' secured first priority interest in all of the Developer's rights and interest in deposits made pursuant to the sales and purchase agreements controlled.

5

At the conclusion of the hearing, the trial court entered final summary judgment in favor of the Lenders and denied the Broker's motion for partial summary judgment. The trial court's written order provides:

> The Listing Agreement at issues gives [the Broker] no legal ownership interest in any portion of the defaulted deposits as a matter of law. Here, without such ownership interest in the deposits, [the Broker] is, at best, a general unsecured creditor of its contracting seller, and there can be no conversion or unjust enrichment claim against [the Lenders], whose first priority interest in the deposits extended to all deposits remitted to and owned by the Developer.

(citations omitted). The Broker's appeal followed.

## II. ANALYSIS

The Broker contends that the trial court erred by entering final summary judgment in favor of the Lenders because, contrary to the trial court's determination, the listing agreement identifies a particular fund from which commissions for units that failed to close are to be paid to the Broker—the retained deposits—and therefore, the Broker had an "ownership interest" in the retained funds. Because the issue before this Court is the interpretation of the listing agreement, our review is de novo. See Real Estate Value Co. v. Carnival Corp., 92 So. 3d 255, 260 (Fla. 3d DCA 2012) ("The interpretation of a contract, including whether the contract or one of its terms is ambiguous, is a matter of law subject to de novo review.").

The parties agree that if the listing agreement between the Broker and the

6

Developer provides that the commissions due and owing to the Broker for the units that failed to close are to be paid **from a particular fund**—the retained deposits—then the Broker had an "ownership interest" in a portion of the retained deposits. See Cohen Fin., LP v. KMC/EC II, LLC, 967 So. 2d 224 (Fla. 3d DCA 2007) (holding that, because the brokerage agreement failed to identify a particular fund from which the broker is to be paid his fee, the broker does not have a legal interest in any specific fund); Riverland & Indian Sun L.C. v. L.J. Melody & Co., 879 So. 2d 1271, 1271-72 (Fla. 3d DCA 2004) (holding that the "the brokerage agreement identified a particular fund to be set aside at the closing for the broker's benefit" where the brokerage agreement provides the fee due to the broker "will be paid by wire transfer out of sale proceeds by the closing as a line item on the closing statement," and therefore, "the broker was clearly a named beneficiary of a particular fund and, therefore, a constructive trust was alleged and the temporary injunction was proper"); Campbell v. Pace, 369 So. 2d 413, 414 (Fla. 3d DCA 1979) (affirming imposition of constructive trust where the letter agreement between the property owner and the brokers provided that the brokers would be paid their commissions from a particular fund). Further, if the Broker had an "ownership interest" in a portion of the retained deposits, the Lenders' first priority interest in the retained deposits did not extend to the portion of the retained deposits in which the Broker had an "ownership interest." Thus, as the trial court

correctly found, if the Broker did not have an "ownership interest" in any portion of the retained deposits, the Broker was, "at best, a general unsecured creditor of its contracting seller, and there can be no conversion or unjust enrichment claim against [the Lenders], whose first priority interest in the deposits extended to all deposits remitted to and **owned by the Developer**." (emphasis added).

The resolution of the issue before this Court is controlled by paragraphs 7(e) and 7(g) of the listing agreement. Paragraph 7(e) sets forth when the Broker is entitled to receive a commission for units that fail to close, and provides the method for calculating the Broker's commission on those units. Although the calculation of the Broker's commission is based, in part, on the amount of the retained deposits—"Broker shall be paid a commission **equal to** one third of the amount of the retained deposits less all collections expenses, but not to exceed the full commission Broker would have earned" (emphasis added)—paragraph 7(e) does not provide that the Broker's commission is to be **paid from the retained deposits**.

Therefore, standing alone, paragraph 7(e) does not identify a particular fund for the payment of commissions due to the Broker for units that failed to close. However, paragraph 7(g) of the listing agreement reflects that any unpaid commissions were to be paid **from two particular funds**: (1) from unit closings when a unit closes, or (2) as is relevant in the instant case, **from retained deposits** when a unit does

8

not close.

We, therefore, conclude that the listing agreement clearly identifies a particular fund for the payment of commissions due to the Broker in the event that a unit fails to close—the retained deposits. Thus, the Broker had an "ownership interest" in a portion of the retained deposits, and the trial court erred, as a matter of law, by entering final summary judgment in favor of the Lenders. Accordingly, we reverse the final summary judgment entered in favor of the Lenders, and remand for further proceedings, including the consideration of the Lenders' motion for summary judgment based on its statute of limitations defense.

Reversed and remanded.